234 N.J. Super. 166 (1989)
560 A.2d 702
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HERBERT BLAKE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 1, 1989.
Decided June 22, 1989.
*167 Before Judges KING, BRODY and SKILLMAN.
Edward P. Hannigan, Deputy Public Defender, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; Edward P. Hannigan, of counsel and on the brief).
Virginia M. Lincoln, Assistant Essex County Prosecutor, argued the cause for respondent (Herbert H. Tate, Jr., Essex County Prosecutor, attorney; Virginia M. Lincoln, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant was indicted together with Wayne Fox and Blaine Ragin on two counts of first degree robbery, in violation of N.J.S.A. 2C:15-1; possession of a handgun without a permit, in violation of N.J.S.A. 2C:39-5b, and possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4a. Fox entered into a plea agreement with the State pursuant to which he testified against defendant and Ragin. A jury convicted defendant of all charges and acquitted Ragin. Defendant's motion for a new trial based upon the State's alleged violation of the discovery rules and the court's sequestration order was denied.
The trial judge merged the conviction for possession of a weapon for an unlawful purpose with the convictions for armed robbery. Defendant was sentenced to concurrent ten year terms, with five years of parole ineligibility, on the robbery *168 convictions and to a consecutive three year term for possession of a handgun without a permit.[1]
On appeal, defendant makes the following arguments:
POINT I: BY ADDRESSING "QUESTIONS" TO THE DEFENDANT DURING CROSS-EXAMINATION CONCERNING THE DEFENDANT'S PURPORTED CONFESSION TO MRS. FOX, QUESTIONS WHICH THE PROSECUTOR DID NOT THEN BELIEVE WOULD OR COULD BE SUPPORTED BY MRS. FOX TESTIMONY, THE PROSECUTOR COMMITTED SO GROSS AN IMPROPRIETY AS TO DEPRIVE THE DEFENDANT OF A FAIR TRIAL.
POINT II: THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND DEPRIVED THE DEFENDANT OF A FAIR TRIAL BY PERMITTING MRS. FOX TO TESTIFY DESPITE THE PROSECUTOR'S BREACH OF HIS DUTY TO DISCLOSE PURSUANT TO R. 3:13-3(a)(2) AND (b).
POINT III: THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND DEPRIVED THE DEFENDANT OF A FAIR TRIAL BY PERMITTING MRS. FOX TO TESTIFY DESPITE THE VIOLATION OF HIS ORDER OF SEQUESTRATION.
POINT IV: THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND DEPRIVED THE DEFENDANT OF A FAIR TRIAL BY PERMITTING GEORGE JOHNSON TO TESTIFY DESPITE THE PROSECUTOR'S BREACH OF HIS DUTY TO DISCLOSE PURSUANT TO R. 3:13-3(a)(7).
POINT V: THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND DEPRIVED THE DEFENDANT OF A FAIR TRIAL BY PERMITTING OFFICER DAVIS TO TESTIFY DESPITE THE BREACH OF HIS DUTY TO DISCLOSE PURSUANT TO R. 3:13-3(a)(2).
POINT VI: THE PROSECUTOR'S STATEMENT TO THE JURY IN THE COURSE OF SUMMATION THAT THE DEFENDANT HAD NOT PRODUCED "ONE WITNESS WHO SAID HE WAS NOT IN THE PARK," CHARACTERIZED BY THE TRIAL JUDGE AS "FAIR COMMENT," WAS MISCONDUCT WHICH DEPRIVED DEFENDANT OF A FAIR TRIAL.
We conclude that the prosecutor violated his discovery obligations under R. 3:13-3(a)(2) and (7) by failing to disclose oral *169 admissions allegedly made by the defendant and the names and addresses of persons known to have relevant information. Moreover, the prosecutor's use of this evidence in rebuttal was so prejudicial that it deprived defendant of a fair trial. Therefore, we reverse and remand for a new trial. Our reversal on this ground makes it unnecessary for us to consider the other points raised by defendant.
To place the prosecutor's discovery violations in context, it is necessary to outline the course of trial proceedings. The State's case-in-chief consisted of the testimony of the two alleged victims of the robbery, Johnnie Jackson and Larry McClain, one of defendant's alleged accomplices, Wayne Fox, and an investigating police officer, Detective Wayne Darby. The State's witnesses testified that co-defendant Ragin encouraged Jackson to take a walk in Soveral Park in East Orange on the afternoon of May 25, 1985 and to bring his large radio with him.[2] While Jackson and Ragin were sitting on a bench drinking beer, Jackson noticed that defendant and Fox kept staring at him. This made Jackson suspicious, so he started to walk out of the park with McClain who had been in the park playing basketball. Noticing Fox and defendant following them, Jackson handed his radio to McClain in anticipation of an altercation. Brandishing a handgun, defendant ordered Jackson and/or McClain to "give up" the radio. Fox attempted to grab the radio from McClain but Jackson pulled it away from both of them. Fox then struck Jackson in the chest. Indicating he would break the radio before giving it to defendant, Jackson threw the radio to the ground. Defendant warned Fox to stand clear and then fired one or two shots at Jackson. Jackson ducked behind a nearby tree unharmed. Thereafter, everyone fled from the scene.
*170 The defendant testified on his own behalf that he did not know Ragin and that he had not been in Soveral Park on the day of the crime. Defendant also testified that Fox was hostile toward him and lied about his involvement in the crime, because defendant's mother had thrown Fox out of her house after she discovered that he had brought a "crack" pipe into the house. On cross-examination, defendant denied admitting to Wayne Fox's mother (Bernadette Fox) that he had committed the robbery and denied giving a false name to the police when they came to arrest him.
Thereafter, the prosecutor advised the trial judge that he would be presenting certain rebuttal witnesses who included: (1) Bernadette Fox, to testify that defendant admitted involvement in the crime during a telephone conversation; (2) Officer Davis, to recount how defendant originally falsely identified himself at the time of his arrest; and (3) George Johnson, to testify that he saw defendant commit the robbery. Defense counsel objected to this testimony on the ground that he had been "sand bagged" by the prosecutor's failure to disclose the identity of the witnesses and the content of defendant's alleged oral admissions before advising his client whether to testify. The trial court overruled defendant's objection and permitted Mrs. Fox, Officer Davis and Johnson to testify in rebuttal.
R. 3:13-3(a)(2) and (7) provide:
Upon written request by the defendant, the prosecuting attorney shall permit defendant to inspect and copy or photograph any relevant
* * * * * * * *
(2) records of statements or confessions, signed or unsigned, by the defendant or copies thereof, and a summary of any admissions or declarations against penal interest made by the defendant that are known to the prosecution but not recorded;
* * * * * * * *
(7) names and addresses of any persons whom the prosecuting attorney knows to have relevant evidence or information including a designation by the prosecuting attorney as to which of those persons he may call as witnesses;
In addition, R. 3:13-3(f) provides:
If subsequent to the compliance with a request by the prosecuting attorney or defense counsel or with an order issued pursuant to the within rule and prior to *171 or during trial a party discovers additional material or witnesses previously requested or ordered subject to discovery or inspection, he shall promptly notify the other party or his attorney of the existence thereof. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, it may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems appropriate.
Pursuant to R. 3:13-3, defense counsel submitted a written request for discovery and inspection which, among other things, requested the prosecutor to furnish:
1. Names and addresses of any persons who did or will, at trial, identify the defendant as having been present at the scene of the alleged crime.
2. Any oral statements or admissions which the State alleges the defendant made, and the names and addresses of persons to whom said statements were made, and copies of any reports of such statements.
It is undisputed that the prosecutor's response to this request did not include the names of Mrs. Fox, Officer Davis or Johnson and did not mention the alleged inculpatory statements made by defendant to Mrs. Fox and Officer Davis. Although defense counsel became aware, during Wayne Fox's testimony, of Johnson's name and address and the relevant information he might possess, there is no indication that defense counsel knew of defendant's alleged statements to Mrs. Fox and Officer Davis prior to defendant's taking the stand. It is also clear that the prosecutor was aware of these alleged statements before defendant testified, because he questioned defendant about them during his cross-examination. Moreover, during a colloquy with the court, the prosecutor admitted that he became aware of defendant's alleged statement to Mrs. Fox four days before defendant testified.
The trial judge properly concluded that the prosecutor's failure to promptly notify defense counsel of defendant's alleged admission to Mrs. Fox constituted a violation of R. 3:13-3(f). Nevertheless, the judge permitted the prosecutor to present Mrs. Fox's testimony regarding this alleged admission in rebuttal, saying:

*172 [W]hether it was done inadvertently or otherwise need not concern the Court. [Defendant] against whom this potentially damaging evidence could be used requests the Court to "prohibit the party from producing in evidence the material that [was not] disclosed." . .. I'm not prepared to do that. I don't think the facts presented in this case will warrant the Court to do that. There can be no dispute as this Court sees fit [sic] that the conversation took place or the conversation did not take place. Although I will not involve myself in conjecture as to what if anything [defendant] would have done had the information been given to him promptly by the Prosecutor when Mrs. Fox told it to him. The record should be crystal clear that the questions on cross examination did not come out of the blue. The Prosecutor has to know them at least during the course of his cross examination of [defendant]. If it... has not already been done, the Court will allow a brief period of time to [defense counsel] to make inquiry of Mrs. Fox concerning her potential testimony in this case.
Based on this ruling, Mrs. Fox testified that defendant admitted to her that he was in Soveral Park and fired a gun in the air on the day of the robbery. While defendant's alleged statement to Mrs. Fox was equivocal in some other respects, it constituted an admission, contrary to defendant's trial testimony, of his presence in the park at the time of the crime and his possession of a handgun.
Although defense counsel objected to Officer Davis's testimony on the ground that the prosecutor had failed to disclose that defendant had allegedly furnished him with a false name when Davis came to arrest him, the trial judge made no finding with respect to the objection. Rather, in allowing the testimony, he simply stated that Officer Davis's testimony was relevant to defendant's credibility. Based on this ruling, Officer Davis testified that when he entered the apartment where defendant was residing, defendant identified himself as "Joseph Blake" rather than "Herbert Blake."
Upon a review of the entire record, we are convinced that the prosecutor's violations of R. 3:13-3(f) and the consequent surprise rebuttal testimony of Mrs. Fox and Officer Davis, especially Mrs. Fox's testimony regarding defendant's alleged admissions, so prejudiced the defendant that a new trial must be held.
*173 The prosecutor's violations of R. 3:13-3(f) were patent. Under R. 3:13-3(a)(7), a defendant is clearly entitled to be notified of any alleged admissions. Indeed, admissions are one of the most potent forms of evidence in a criminal trial. Yet the prosecutor delayed at least four days without disclosing this evidence to the defense, revealing it for the first time during defendant's cross-examination. This violation of R. 3:13-3(f) could not have been inadvertent.
The prejudice to defendant from this discovery violation is also clear. "The decision of a defendant in a criminal case as to whether or not to testify ... is an important strategic or tactical decision to be made by a defendant with the advice of his counsel." State v. Bogus, 223 N.J. Super. 409, 423 (App. Div. 1988). Defense counsel could not possibly have given defendant fully informed advice as to this "important strategic or tactical decision" without knowing the highly damaging testimony which Mrs. Fox was prepared to give in rebuttal.
While there is no New Jersey case on point, the conclusion that a new trial is required under these circumstances is supported by decisions in other jurisdictions which have held that the government's failure to disclose a defendant's alleged inculpatory statements prior to the defendant taking the witness stand and the subsequent introduction of evidence of those statements in rebuttal constitutes reversible error. See United States v. Lewis, 511 F.2d 798 (D.C. Cir.1975); United States v. Padrone, 406 F.2d 560, 561 (2d Cir.1969); Browning v. State, 274 Ark. 13, 621 S.W.2d 688 (1981); Rosser v. United States, 381 A.2d 598 (D.C.App. 1977); Garard v. State, 159 Ga. App. 248, 283 S.E.2d 27 (1981); State v. Mitchell, 412 So.2d 1042, 1044-1045 (La. 1982); Morris v. State, 436 So.2d 1381, 1384-1386 (Miss. 1983); Commonwealth v. Jenkins, 476 Pa. 467, 383 A.2d 195 (1978); see also Mauricio v. Duckworth, 840 F.2d 454 (7th Cir.1988), cert. den. ___ U.S. ___, 109 S.Ct. 177, 102 L.Ed.2d 146 (1988); United States v. Noe, 821 F.2d 604, 606-609 (11th Cir.1987); United States v. Arcentales, 532 F.2d *174 1046, 1050 (5th Cir.1976); State v. Schwantes, 314 N.W.2d 243, 244 (Minn. 1982).
For example, in United States v. Lewis, supra, the defendant made an alleged inculpatory statement which the prosecutor concealed before trial and disclosed for the first time during defendant's cross-examination. Over objection, the trial court permitted defendant to be cross-examined regarding the alleged statement and permitted the government to present rebuttal testimony by the police officer to whom the statement was allegedly made. The Court of Appeals reversed, stating:
Had [defense counsel] not been misled with respect to whether [defendant] had made any relevant and possibly incriminating statement upon arrest, his trial preparation and strategy might well have been different....
* * * * * * * *
The importance of disclosure of a defendant's statements to authorities in the preparation of his defense and in promoting a fairer and more efficient administration of the criminal justice system is now generally thought to outweigh the chance that disclosure may increase the likelihood of perjury by a defendant in those cases that go to trial. [511 F.2d at 801-802.]
In United States v. Padrone, supra, the prosecution failed to advise defense counsel of the existence of a statement given by defendant and counsel permitted defendant to take the stand without realizing that his client would be subjected to cross-examination based upon prior inconsistent statements. In concluding that the defendant was denied his right to a fair trial, the Second Circuit said:
We believe that noncompliance with an order to furnish a copy of a statement made by the defendant is so serious a detriment to the preparation for trial and the defense of serious criminal charges that where it is apparent, as here, that defense strategy may have been determined by the failure to comply, there should be a new trial.... Had defense counsel known the contents of the statement, he might well have advised [defendant] not to take the stand. [406 F.2d at 561.]
Similarly, in State v. Mitchell, supra, the prosecutor became aware of an inculpatory letter written by the defendant during his case-in-chief but failed to advise defense counsel of the statement prior to utilizing it during the defendant's cross-examination. *175 In holding that this failure to comply with the discovery rules constituted reversible error, the court stated:
If the State had furnished the defendant with a copy of the letter prior to trial or even prior to the beginning of his testimony, time to prepare a defense might have been available. Had defense counsel known of the existence of the letter earlier, it is arguable that a different trial strategy would have been employed, including the choice of not permitting the defendant to testify. [412 So.2d at 1044-1045].
We conclude essentially for the reasons expressed in Lewis, Padrone and Mitchell that the prosecutor's failure to disclose defendant's alleged inculpatory statements before he took the stand deprived defendant of a fair trial. Therefore, the judgment of conviction is reversed and the case is remanded for a new trial.
NOTES
[1] The trial judge signed two judgments on the day of sentencing. One reflects the sentence imposed in court. The other imposes concurrent ten year sentences, with three and one-third years of parole ineligibility, on the robbery convictions, and a concurrent three year sentence on the conviction for possession of a handgun without a permit. The record before us provides no explanation for the latter judgment. Therefore, we cannot be sure whether it was signed subsequently and was intended to supersede the former judgment. Since defendant's conviction must be reversed for other reasons and defendant will be resentenced if convicted after a retrial, there is no need for us to pursue this inconsistency.
[2] The State charged that defendant had conspired with Ragin to encourage Jackson to come to the park with his radio so that defendant could rob him. However, the jury acquitted Ragin of all charges.