571 A.2d 999

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
LINWOOD JONES, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 23, 1990—Decided March 20, 1990.

Before Judges MICHELS, COHEN and BROCHIN.

*Alan Dexter Bowman* argued the cause for appellant (*Alan Dexter Bowman,* attorney, *Alan Dexter Bowman,* on the brief).

*Jeffrey L. Weinstein,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney, *Barbara A. Davis,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

Defendant Linwood Jones, co-defendant Carlton Byrd and others were indicted for receiving stolen property, valued in excess of $75,000, and bringing it into New Jersey, contrary to *N.J.S.A.* 2C:20–7, and for conspiring to do so, contrary to *N.J.S.A.* 2C:20–7 and *N.J.S.A.* 2C:5–2. The charges against several of the co-conspirators were severed and they were each tried separately, but defendant Jones was tried together with co-defendant Byrd. Jones was acquitted of conspiracy but convicted of the substantive offense. He was sentenced as a persistent offender to twenty years' imprisonment with ten years' parole ineligibility.

Jones appeals on two grounds. First, he argues that he was prejudiced by the court's limitation on his cross-examination of Derek Bannerman, the State's principal witness. The court's ruling, he contends, erroneously precluded him from attacking Bannerman's credibility by showing the jury the full extent of the witness's ongoing employment by the prosecutor as an informant in other cases. For that alleged error, defendant asks us to remand the case to the trial court for discovery and a hearing at which he will be able to establish what information he could have adduced if he had been permitted to do so. Thereafter, if the information obtained would warrant the relief, defendant would move for a new trial. As a second ground of error, defendant claims that, although he did not move for a severance before trial, trying him together with his co-defendant, Carlton Byrd, was prejudicial error which, by itself, entitles him to a new trial.

Jones and Byrd were tried and convicted for participation in the theft and receiving of two truckloads of tires. To obtain the convictions, the State relied principally on the testimony of Derek Bannerman. He had worked in the office of H. & H. Tire Service, the company whose principals were charged as co-conspirators and whose warehouse was the site to which the hijacked tires were delivered. He had overheard plans for the

theft being discussed and had helped to unload a shipment of tires at the H. & H. Tire Service warehouse at one o'clock in the morning following their theft. For his assistance, he received four tires and $100.

Several months later, after his employment at the warehouse had been terminated, he approached the Camden County Prosecutor's office, telling them that he had information about a theft of tires. He cooperated in an investigation which was conducted by the prosecutor's office and, because the theft itself had occurred in Pennsylvania, by the Pennsylvania State Police. In order to obtain evidence against the perpetrators of the theft, Bannerman wore a hidden microphone and tape recorder, conversed with them, and recorded their conversations. He recorded incriminating statements by all of the conspirators except Jones.

During the trial, Bannerman positively identified both Byrd and Jones as two of the men who were involved in unloading the hijacked tires from the trucks at the H. & H. Tire Service warehouse. The State also introduced into evidence a taped conversation between Byrd and Bannerman which clearly incriminated Byrd. There was no tape recording of any statements by Jones.

Jones did not testify on his own behalf, but he presented four alibi witnesses. Two of these witnesses testified that they had gotten married to each other on June 27, 1985, the date of the hijacking. Their wedding took place in Sicklerville, New Jersey, commencing about 5:00 or 5:30 in the evening. They testified that Jones was a member of their wedding party, and their wedding program and photographs were introduced into evidence to corroborate their testimony.

The wedding photographer testified that Jones left the wedding with him and went to the photographer's house where they had some drinks and spent the night. According to the photographer, he kept Jones' car keys and Jones could therefore not have left the house during the night. He testified that Jones

stayed all night and helped him make breakfast the next morning.

On direct examination, Bannerman told the jury that while he was cooperating with the Pennsylvania State Police, he learned that a reward had been offered for information about the tire theft. He volunteered the testimony that one of his reasons for offering to assist the police was:

> I was out of work and stuff and I thought maybe, you know, with my cooperation and everything maybe they could help me get a job.

He then testified as follows:

> Q. Did they get you a job?
> A. They helped me get a job, yes.
> Q. How did they help you get a job? I'm talking about back in 1986.
> A. Yeah, they got me a job. I got a job. But if I tell you how they helped me get a job and so forth I think I'm endangering myself.

Outside the presence of the jury, the court then asked the prosecutor whether he knew anything about how Bannerman was helped to get a job. The prosecutor answered, "Not really, your Honor, but my suspicion is that he did informant work." At the judge's suggestion, the prosecutor then spoke alone to Mr. Bannerman and reported that he did get a job and that "part of that was as an informant." The prosecutor added that Mr. Bannerman had been paid for that work.

Jones' attorney then inquired whether the prosecutor's office had helped Bannerman to get a job. In response, the State confirmed that Bannerman was working for the prosecutor's office. Defendant's attorney then asked about the length of Bannerman's employment, whether the prosecutor was continuing to pay him, and how much money he was receiving. The court, however, relying on *Evid. R.* 36, declined to compel the State to answer.

The jury was recalled and the court charged them as follows:

> We've determined that Mr. Bannerman has acted in other cases aside from this one as an undercover informant. And we've determined that in those other cases aside from this one he has been paid for his activities as an undercover informant and we have determined that when he said he was scared he wasn't talking about these two defendants, he was talking about he would be scared

for his general welfare if he was required to disclose those other matters in which he worked as an undercover informant. So I have indicated that we're not going to develop the names of those other cases or the other matters that he worked on as an undercover informant. I think that's for obvious reasons. I've indicated we're not going to bother to try to establish an accounting, that is how much money he got paid on those other jobs because obviously we'd have to find out how many he worked and how much each one brought and so forth and so on and that would take a lot of time and I don't think that it's fruitful. The important thing for you folks to realize, of course, is the fact that he did work as an undercover agent for the prosecutor's office in other matters and received payment for it. You may consider that when evaluating his bias, prejudice, interest or motive for testifying. And that, of course, is in addition to what he may have done in this case and what he may have been paid in this case and what he may anticipate to get in this case.

Thereafter Bannerman told the jury that the total reward which had been offered in connection with the theft of the tires was $5,000. He had received $100 of that money on the day that he was testifying and $2,900 previously. He hoped to receive the remaining $2,000 when the defendants were convicted, but he would not receive the rest of the money if there were no convictions.

We agree with defendant that *Evid.R.* 36 does not protect Mr. Bannerman from having to disclose the extent and continuing nature of his employment by the prosecutor's office. *Evid.R.* 36 deals with the government's privilege to refuse to disclose the identity of an informant "unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues." In the present case, of course, the identity of the informant had already been disclosed. Mr. Bannerman was testifying in open court. The questions is, whether there was an adequate disclosure of all matters which might reasonably have affected his credibility. *Cf. State v. Roundtree,* 118 *N.J.Super.* 22, 285 *A.*2d 564 (App.Div.1971).

In *State v. Sugar (II),* 100 *N.J.* 214, 495 *A.*2d 90 (1985), the Supreme Court held that the State would be precluded from offering the direct testimony of a State's witness, Detective

Joseph Mazzeo. The reason for the preclusion was that the most effective way for the defendant to have cross-examined the witness to show his bias would have been by interrogating him about his participation in an illegal interception of conversations between the defendant and the defendant's attorney. However, as the court had noted in a prior decision in the same case, "[t]o question a witness before a jury about his knowledge of overheard statements would be unthinkable" because such questions would generate inferences about information that was overheard and suppressed as the result of the unlawful interception. *State v. Sugar (I)*, 84 *N.J.* 1, 24, 417 *A.*2d 474 (1980). In explanation for its ruling barring the presentation of Detective Mazzeo's testimony on behalf of the State, the court wrote:

> The right to cross-examine and test for bias at a plenary trial of criminal charges is indispensable. *State v. Pontery*, 19 *N.J.* 457, 472 [117 *A.*2d 473] (1955). It is a right of constitutional dimensions. *Pointer v. Texas*, 380 U.S. 400, 85 *S.Ct.* 1065, 13 *L.Ed.*2d 923 (1965); *see State v. Engel*, 99 *N.J.* 453 [493 *A.*2d 1217] (1985). There can be no question that a defendant must be afforded the opportunity through effective cross-examination to show bias on the part of adverse state witnesses. *State v. Sugar (II), supra*, 100 *N.J.* at 230, 495 *A.*2d 90. [citations omitted]

The State, of course, does not disagree with these general principles. However, the State contends that the limits which the trial court imposed on the defendant's cross-examination of Bannerman were within its discretion because, in the words of the State's brief,

> [A]mple evidence of Mr. Bannerman's potential bias, motive and interest in this case had been elicited by the prosecutor on direct and by the two defense attorneys on cross-examination. The details of the $5,000 reward and the fact that Mr. Bannerman had already received $3,000 of $5,000 by the time of trial were put before the jury. The jury was also made aware of Mr. Bannerman's former employment at H & H Tire as well as the circumstances of his departure from H & H Tire.

> In addition, the jury was advised by the trial court that Bannerman had worked as a paid informant for the prosecutor's office in unrelated cases....

> The State submits that the details of the payments Mr. Bannerman may have received for his work as an informant in unrelated cases, as well as the details of those cases themselves were properly excluded under *Evid.R.* 4 as being too remote.

■ We disagree with the State's position. Mr. Bannerman's testimony and the scanty statements by the prosecutor, on the record but outside the presence of the jury, suggest that even on the day of trial Bannerman was a continuing employee of the prosecutor's office, performing services as an informant in other cases. In our view, the jury could reasonably have concluded that an informant who was a present employee of the prosecutor's office and might lose his job if his testimony did not satisfy his employer would have a stronger motive to lie than an informant who had nothing more to lose except possibly the contingent $2,000 of his reward which was still unpaid. Furthermore, perhaps the amount of the compensation which Bannerman had received and the amount, if any, which he was still continuing to receive were modest and did not materially add to the incentive created by the contingent portion of the reward which he had already disclosed. Conceivably, however, the jury might have concluded that those amounts were sufficient to serve as a powerful additional incentive for Bannerman to testify falsely in a way which he might think would satisfy the prosecutor's office. On the present record, of course, we cannot tell, and neither could the trial judge. The defendant was entitled to the disclosure of that information. *See State v. Satkin,* 127 *N.J. Super.* 306, 311, 317 *A.*2d 379 (App.Div.1974), where this court held that the defendants were entitled to full information about the substantial payments made to or for a material witness so that the defendants could investigate and determine "whether the payments to the material witness go beyond the reasonable needs of his maintenance. This may have a vital bearing on the ability of defendants to attack the credibility of the witness."

■ We also agree with the defendant that if Bannerman was a continuing employee of the prosecutor's officer, that information and the amount of his compensation was *Brady* material which the prosecutor was obligated to disclose in discovery. *Brady v. Maryland,* 373 *U.S.* 83, 83 *S.Ct.* 1194, 10 *L.Ed.*2d 215 (1963); *Giglio v. United States,* 405 *U.S.* 150, 92

*S.Ct.* 763, 31 *L.Ed.*2d. 104 (1972). Consequently, the defendant should have the opportunity to explore whether any such material was withheld and, if so, whether the withholding was wilful. *Cf. State v. Casele,* 198 *N.J.Super.* 462, 469–470, 487 *A.*2d 765 (App.Div.1985); *State v. Serret,* 198 *N.J.Super.* 21, 26, 486 *A.*2d 345 (App.Div.1984), certif. den. 101 *N.J.* 217, 501 *A.*2d 899 (1985). *See also State v. Blake,* 234 *N.J. Super.* 166, 560 *A.*2d 702 (App.Div.1989) (Prosecutor's wilful violation deprived defendant of fair trial).

■ Accordingly, this case must be remanded for the hearing requested by defendant. He should have the opportunity to explore whether Bannerman was still employed by the prosecutor's office at the time of trial, the amount of compensation which he received and expected to receive in the future, and any other matters reasonably relevant to Bannerman's credibility. In advance of the hearing, the prosecutor should turn over appropriate discovery material to the defendant. At the hearing, the trial judge should, of course, endeavor to protect the interests of the State and the safety of the informant. Consequently, the trial judge may determine that the State is not obligated to identify which particular investigations Mr. Bannerman is involved in, provided that withholding that information will not be material to issues of credibility. If information was withheld from the defendant which would have been material to evaluating Mr. Bannerman's credibility as a witness, the defendant should also have the opportunity to investigate whether any omission to disclose that information was the result of inadvertence or was done in bad faith. After all relevant information has been developed, defendant may move before the trial court for a new trial pursuant to *R.* 3:20.

■ As to defendant's second ground of appeal, his trial jointly with Carlton Byrd, we agree with the State that the trial court's failure *sua sponte* to sever defendant's trial from that of his co-defendant was not error. The trial court's limiting instructions to the jury advising them about the use which they

might make of Byrd's recorded statements were entirely adequate.

The case is remanded to the trial court for proceedings consistent with this opinion. The hearing which we have directed should take place within 45 days. Any motion for a new trial based on information developed pursuant to our directions for a remand should be made and decided promptly. We retain jurisdiction to review any ruling of the trial court on such a motion.