**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0747-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DYSHON RAGLAND,
a/k/a RAGLAND DYSHON,

    Defendant-Appellant.

_____

        Submitted January 23, 2018- Decided July 27, 2018

        Before Judges Carroll and Leone.

        On appeal from Superior Court of New Jersey,
        Law Division, Ocean County, Indictment No. 10-
        07-1359.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Michele A. Adubato, Designated
        Counsel, on the brief).

        Joseph D. Coronato, Ocean County Prosecutor,
        attorney for respondent (Samuel Marzarella,
        Chief Appellate Attorney, of counsel; John C.
        Tassini, Assistant Prosecutor, on the brief).

        Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Dyshon Ragland appeals the July 18, 2016 denial of his motion for post-conviction relief (PCR). We affirm.

I.

The facts are detailed in our prior opinion. State v. Ragland, No. A-5993-10 (App. Div. Nov. 7, 2013), certif. denied, 217 N.J. 590 (2014). We summarize, highlighting portions pertinent to this appeal.

On February 27, 2008, defendant and two juveniles including Anthony Skyers, all members of a Bloods street gang, entered a Subway restaurant in Toms River. Defendant pointed a gun at the cashier and robbed the restaurant. Z.J., defendant's girlfriend with whom he was living, testified defendant said he did the robbery and Skyers was present with him. Z.J. also testified that when defendant heard he was wanted for the robbery, he moved out of Z.J.'s apartment and went to Virginia for about two weeks.

On June 5, 2008, Skyers was arrested for underage possession of alcohol, and his companion was arrested for supplying a minor with alcohol. Skyers was immediately released with a summons, but the companion was held.

According to Z.J., the companion's sister telephoned defendant at approximately 5:30 or 6:00 p.m. that evening. Although Z.J. could hear only one side of the telephone conversation, she heard defendant say, "I hope he didn't do what

2

I think that he's done" and "if he did what I think he did, I'm just going to have to shut him up."  After the conversation ended, defendant told Z.J. that he was referring to Skyers, who had just been "picked up and locked up by the police" along with the companion.  Z.J. also testified defendant received other upsetting telephone calls about Skyers in which defendant stated that he was "just going to take care of the situation and eliminate the problem."

Z.J. testified that at approximately 7:00 p.m., defendant left Z.J.'s apartment, telling her that he was "going around the corner," and that he returned after 9:40 p.m.  At 9:00 p.m., a person living near a wooded trail heard two gunshots.

After 10:00 p.m., defendant took a fellow Bloods member C.B. along the wooded trail to where Skyers's body lay with a bullet hole in his head.  Defendant said he shot Skyers and "this is what happens to snitches."  C.B. was aware defendant "didn't want [Skyers] . . . around" because Skyers had "snitch[ed] on the Subway robbery."

Z.J. testified that, after midnight, co-defendant Dennis Thigpen, Jr. arrived and looked "spooked," that defendant had a meeting with Thigpen, and that defendant told her only "something bad just happened."  Later, after the police told her Skyers was

A-0747-16T2

dead, defendant told her "he was there but he wasn't the one that done it."

Defendant was taken into custody for the robbery, and made incriminating statements. While being held in the county jail on the robbery charge, defendant befriended fellow prisoner Charles Anderson. According to Anderson, defendant spoke about the Subway robbery and Skyers's murder multiple times. Anderson also claimed defendant asked him to write a letter to the prosecutor, informing that an individual named D-Bow committed the murder. Instead, Anderson wrote a letter to the prosecutor seeking to be released on his own recognizance in exchange for information about the Subway robbery and Skyers's murder.

After meeting with detectives, Anderson agreed to wear a wireless recording device so that further information could be collected directly from defendant. Anderson was returned to his original lodging in the jail. Defendant's "consensual intercept" conversation with Anderson was recorded and played for the jury.

In October 2008, defendant confronted Anderson with what appeared to be a police report, stating that Anderson had told the police that defendant committed the Subway robbery. Defendant said if Anderson did not write a letter stating defendant had not committed the robbery, Anderson would be "food," meaning that he would be targeted for an assault or death. Feeling threatened,

Anderson wrote a letter recanting everything he had told the prosecutor's office about defendant, as well as the information contained in the "consensual intercept."

Jacarlos McKoy, a fellow inmate with defendant and Anderson in the county jail, became a member of the Bloods street gang while incarcerated on October 31, 2008, but dropped out of the gang in 2010. McKoy testified that defendant approached him in the jail's recreation yard near the end of 2008, asking him "how . . . [McKoy] was living with a snitch?" Defendant showed McKoy a paper suggesting that Anderson was cooperating with law enforcement authorities, and indicated that defendant would increase McKoy's rank in the street gang if he assaulted Anderson. McKoy recruited fellow inmate Jashon Brinson to help with the assault because Anderson was "not really a small guy."

On March 12, 2009, Brinson and McKoy assaulted Anderson. As sheriff's officers were rescuing Anderson, he saw defendant laughing at him and saying, "[H]ey, they got you, they got you, they F you up." Later, when defendant and McKoy were then housed together in the county jail, defendant told McKoy that he "executed" Skyers with a revolver because he thought Skyers "was snitching about a Subway robbery."

Defendant was convicted of first-degree armed robbery, N.J.S.A. 2C:15-1; first-degree conspiracy to commit murder,

N.J.S.A. 2C:5-2 and 2C:11-3; first-degree purposeful or knowing murder of Skyers, N.J.S.A. 2C:11-3(a) or (b); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); third-degree aggravated assault against Anderson, N.J.S.A. 2C:12-1(b)(7); third-degree conspiracy with McKoy, Brinson, or both to commit witness tampering against Anderson, N.J.S.A. 2C:5-2 and 2C:28-5(a); and third-degree witness tampering against Anderson, N.J.S.A. 2C:28-5(a)(1). The trial court sentenced him to sixty-two years in prison, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

We affirmed defendant's August 6, 2011 judgment of conviction. The Supreme Court denied certification in June 2014.

Defendant filed a pro se PCR petition on July 22, 2014. The PCR judge dismissed the petition. Defendant appealed and we vacated and remanded for assignment of PCR counsel, who filed a PCR brief. After hearing argument and some sworn testimony from defendant, the PCR judge denied the petition on July 18, 2016.

Defendant's counseled brief raises the following claims:

> POINT I — FAILURE OF THE PCR COURT TO GRANT THE DEFENDANT AN EVIDENTIARY HEARING ON HIS CLAIMS OF INEFFECTIVE ASSISTANCE OF PLEA COUNSEL AND DISCOVERY VIOLATION WAS ERROR.
>
> > A. DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

B.  TRIAL COUNSEL FAILED TO CONDUCT AN ADEQUATE INVESTIGATION.

C.  THE STATE'S FAILURE TO PROVIDE DISCOVERY REGARDING MONETARY PAYMENTS PAID TO STATE WITNESSES DEPRIVED MR. RAGLAND OF A FAIR TRIAL.

Defendant's pro se brief raises the identical claims, and is largely indistinguishable from his counseled brief.

II.

Defendant argues the PCR court erred in denying him an evidentiary hearing on his ineffective assistance of counsel claim. "A defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie [case] in support of post-conviction relief." R. 3:22-10(b). "To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts in the light most favorable to defendant, will ultimately succeed on the merits." Ibid. To the extent the PCR court did not hold a full evidentiary hearing, we "conduct a de novo review." State v. Harris, 181 N.J. 391, 419 (2004). We must hew to that standard of review.

To show ineffective assistance of counsel, defendant had to meet the two-pronged test of Strickland v. Washington, 466 U.S. 668 (1984), adopted in State v. Fritz, 105 N.J. 42 (1987). "The defendant must demonstrate first that counsel's performance was

deficient, i.e., that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' In making that demonstration, a defendant must overcome a strong presumption that counsel rendered reasonable professional assistance." State v. Parker, 212 N.J. 269, 279 (2012) (quoting Strickland, 466 U.S. at 687). Second, "a defendant must also establish that the ineffectiveness of his attorney prejudiced his defense. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 279-80 (quoting Strickland, 466 U.S. at 694).

## III.

Defendant argues trial counsel failed to conduct an adequate investigation into the criminal histories of McKoy and Brinson. However, "[w]hen a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." State v. Porter, 216 N.J. 343, 353 (2013) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)). Contrary to Rule 3:22-10(c), defendant

failed to supply any affidavit or certification, and does not state what such an investigation would have revealed.

Instead, defendant merely asserts a full investigation would have revealed the past associations and conduct of McCoy and Brinson. However, a PCR court shall not grant an evidentiary hearing "if the defendant's allegations are too vague, conclusory or speculative." R. 3:22-10(e)(2). "Rather, defendant must allege specific facts and evidence supporting his allegations." Porter, 216 N.J. at 355.

Defendant supplied the PCR court with an August 29, 2015 statement by Brinson indicating defendant was not involved in the assault. Defendant has failed to supply that statement to us, in violation of Rule 2:6-1(a)(1)(I). In any event, Brinson testified he did not know defendant, had no knowledge of his involvement in the assault, and was going to assault Anderson regardless at McCoy's behest. The PCR court properly concluded that "Brinson's statement, made four years after the conclusion of trial, is immaterial."

In the PCR court, defendant said he knew Brinson and alleged he told trial counsel. However, as the PCR court concluded, whether Brinson knew defendant would not affect the outcome.

Trial counsel had ample information with which he could or did cross-examine Brinson and McCoy, including: Brinson's two

prior drug convictions; McKoy's pending murder charge; their admitted gang membership; their videotaped assault on Anderson; their motives to assault Anderson regardless of defendant; their pending criminal charges arising out of the assault; and their agreement to testify against defendant and plead guilty to some charges in return for the concessions by the prosecutor at their upcoming sentencings. Indeed, trial counsel's efforts were sufficient to gain acquittals on the charges of second-degree assault on Anderson, and of witness tampering by employing or threatening force against Anderson or conspiring to do so. Defendant has failed to show a prima facie case that trial counsel was ineffective. See State v. Marshall, 148 N.J. 89, 166-67, 169 (1997).

IV.

Defendant claims trial counsel failed to review all his intercepted conversations with Anderson and to review them with him. He also asserts counsel was ineffective for not requesting a hearing about the electronic enhancement of those conversations, and calling the person who did the enhancement as a witness. Before the PCR court, defendant complained the recordings were redacted. Defendant asserts it was not him on the tape.

However, defendant does not provide any affidavit or certification or otherwise proffer any evidence that review of the

recordings, the redacted portions of the recordings, testimony by the enhancer, or a hearing would have produced any information that would have led to the exclusion of the conversations or otherwise aided defendant. "[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel. . . . [H]e must assert the facts that an investigation would have revealed, supported by affidavits or certifications." Porter, 216 N.J. at 355 (quoting Cummings, 321 N.J. Super. at 170).

## V.

Finally, defendant claims that the State paid money to Z.J. for relocation and living expenses before she gave her last statement, which inculpated defendant. Defendant argues he discovered this information at the separate trial of Thigpen. Defendant contends similar payments were made for J.V., the roommate of Thigpen's girlfriend. Defendant argues the State failed to provide this information in discovery.

At the PCR hearing, the State indicated it may have paid relocation expenses because the witnesses feared retaliation for their testimony. We assume such payments should be disclosed in discovery. See State v. Jones, 239 N.J. Super. 460, 467 (App. Div. 1990) (requiring the disclosure of payments to a witness under Brady v. Maryland, 373 U.S. 83 (1963)).

A-0747-16T2

Defendant provided no affidavits or certifications supporting his claims. He supplied the PCR court with a document allegedly showing $17,000 in relocation expenses paid on behalf of J.V., but has failed to supply it to us.[1] An appellant must include in the appendix "such other parts of the record . . . as are essential to the proper consideration of the issues." R. 2:6-1(a)(1)(I). "We obviously cannot address documents not included in the record." State v. Robertson, 438 N.J. Super. 47, 56 n.4 (App. Div. 2014). Nor are we "obliged to attempt review of an issue when the relevant portions of the record are not included." Cmty. Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005); see Cipala v. Lincoln Tech. Inst., 179 N.J. 45, 54-55 (2004) (upholding our refusal to address an issue where the appellant failed to provide the relevant portion of the record).

Defendant argued to the PCR court that "[i]t is Mr. Ragland's information and belief that [Z.J.] had a similar arrangement" under which she "was allegedly provided funds and moved." However, "[a]ny factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification pursuant

---

[1] Defendant said he would send the PCR court a similar document regarding Z.J., but the record does not indicate that he did so, and he has not supplied it to us.

to Rule 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing." Porter, 216 N.J. at 355 (quoting R. 3:22-10(c)). A requirement that "an affidavit supporting a motion must be based on 'personal knowledge' is not satisfied by a statement 'based merely on 'information and belief.'" Claypotch v. Heller, Inc., 360 N.J. Super. 472, 489 (App. Div. 2003) (quoting Pressler, Current N.J. Court Rules, cmt. 2 on R. 1:6-6 (2003)). Thus, defendant's unsworn assertion based solely on information and belief was "patently inadequate." Jacobs v. Walt Disney World, Co., 309 N.J. Super. 443, 454 (App. Div. 1998).

Moreover, defendant does not show why he can raise now a claim that the State violated its discovery obligations. Rule 3:22-4(a) provides:

> Any ground for relief not raised in the proceedings resulting in the conviction, . . . or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds:
>
> (1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or
>
> (2) that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or

13                                    A-0747-16T2

> (3) that denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey.

Defendant does not claim that the second or third exception applies. As to the first exception, "[a] ground could not reasonably have been raised in a prior proceeding only if defendant shows that the factual predicate for that ground could not have been discovered earlier through the exercise of reasonable diligence." Ibid.

Defendant stated under oath to the PCR court that this information came out at Thigpen's trial. However, defendant has not shown when Thigpen's trial occurred, why the information could not have been discovered earlier through the exercise of reasonable diligence, or why the claim could not reasonably have been raised in any prior proceeding. See R. 3:20-2 ("A motion for a new trial based on the ground of newly-discovered evidence may be made at any time, but if an appeal is pending the court may grant the motion only on remand of the case."); State v. Carter, 85 N.J. 300, 303 (1981) (remanding to consider the defendants' newly-discovered evidence and Brady claims).

In the PCR court, defendant contended that trial counsel failed to investigate adequately the arrangements Z.J. and J.V.

had with the State to discover these alleged relocation payments. However, trial counsel asserted defendant's right to discovery "if the State in any way is assisting [Z.J.] in housing or monetarily, in any way giving her assistance, extra protection." The trial court agreed, and the prosecutor had no objection to making such inquiries of Z.J. Defendant fails to allege what more trial counsel could have done.

In any event, whether defendant is raising this claim as a discovery violation under Brady or as ineffective assistance of counsel under Strickland, he must show a reasonable probability that the result of the trial would have been different had the information been available. State v. Martini, 160 N.J. 248, 264, 269 (1999); see Strickland, 466 U.S. at 694 ("the appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution"). He has not made a prima facie showing.

Trial counsel had ample ammunition for cross-examining Z.J., including her gang membership; her long-held belief defendant was innocent; her subsequent relationship with C.B., who told her defendant was meeting with other girls after Skyers was killed; her repeated lying to police in her earlier statements; the police cursing at her and telling her people were after her and her children needed her; her delay of over a year in giving a statement

inculpating defendant; her failure to tell her cousins and others what she was telling the jury; and her failure to disclose defendant was living with her to protect her subsidized housing and welfare payments. Indeed, trial counsel cross-examined Z.J. for over ninety-five pages.

Given this wealth of cross-examination material to show Z.J. was a lying, jealous former girlfriend who was pressured by police, information that the State paid to relocate Z.J. would have added little. As our Supreme Court stated in rejecting similar claims based on non-disclosure of relocation expenses under the Federal Witness Protection Program, "[a]ny possible incremental effect on [the witness]'s credibility from the additional revelation that financial accommodations were made to support his family would have been merely cumulative." State v. Marshall, 123 N.J. 1, 207 (1991); accord Marshall, 148 N.J. at 162.

Moreover, eliciting that the State paid to relocate Z.J., "although possibly beneficial to the defendant, posed the clear risk of an adverse jury reaction." Martini, 160 N.J. at 256, 269 (quoting Marshall, 148 N.J. at 256). To explain why she had withheld inculpatory information for over a year, the prosecution elicited from her that she "was kind of afraid." On cross-examination, defense counsel got her to admit that defendant never threatened her or told her not to talk to anyone. To elicit that

the State found it necessary to pay to relocate her would risk confirming that she was really afraid of retaliation by defendant. Not only would that aid the credibility of her final statement inculpating defendant, but it would paint defendant in a bad light and corroborate that he would retaliate against those who snitched against him, which was the theory of why he murdered Skyers and went after Anderson.

Moreover, the other evidence against defendant was strong. The other juvenile with defendant in the Subway, and a customer, identified him as the robber. C.B. testified how defendant showed him Skyers's body, and how defendant admitted he killed Skyers for snitching that he committed the robbery. Anderson testified that defendant confessed to the robbery and the murder. The recording of their conversation was incriminating. Anderson, McKoy, and Brinson testified how defendant sought to retaliate against Anderson. Finally, defendant made incriminating remarks to the police.

Thus, even assuming that the State paid to relocate Z.J., and that the information was not disclosed to or unearthed by defense counsel, defendant has not shown a prima facie case that there was a reasonable probability the result of the trial would have been different if defense counsel had elicited that the State paid to relocate Z.J. See Marshall, 123 N.J. at 207 (finding there was

17

"no reasonable possibility that the further impeachment of [the witness] by reference to the financial support his family received from the State would have affected the verdict"); accord Marshall, 148 N.J. at 162.

Defendant also cannot show that the verdict would have been different if defense counsel had elicited that the State paid to relocate J.V. J.V. gave very brief testimony. She did not know defendant or other witnesses in his trial. She testified that Thigpen told her he lured a "boy" into the woods and shot him twice because he ratted on "D-Block," but she did not know who D-Block was.[2] Given her testimony that Thigpen committed the murder, defense counsel on cross-examination did not try to discredit J.V. Rather, he elicited that J.V. "didn't hold anything back" from the police, that Thigpen "was telling her what he honestly believes," and that Thigpen told her he was alone when he committed the murder, D-Block was locked up at the time, and D-Block was not part of the conversation about whether to shoot the boy.

To elicit that the State paid to relocate J.V. to discredit her would have undermined her testimony that defendant was uninvolved in the murder. It could also have had the same adverse jury reaction.

---

[2] Other testimony showed D-Block was defendant's nickname.

18

Defendant failed to establish a prima facie case entitling him to a full evidentiary hearing.

To the extent defendant's pro se brief raises any additional arguments, they lack sufficient merit to warrant discussion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0747-16T2