743 A.2d 357

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JOHN P. GREEN, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 3, 2000—Decided January 19, 2000.

Before Judges PETRELLA and CONLEY.

John P. Green, appellant pro se.

*Stephen B. Rubin*, Hunterdon County Prosecutor, attorney for respondent (*Marcia A. Crowe*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by,

CONLEY, J.A.D.

Defendant appeals his Municipal Court and, on *de novo* appeal, Superior Court, Law Division, speeding conviction and resulting $107 fine. Among the variety of issues raised, he contends that the State did not establish beyond a reasonable doubt the necessary basis for his conviction of speeding pursuant to *N.J.S.A.* 39:4–98a. We agree and for that reason alone, we reverse the conviction and fine. We need not, therefore, address the other issues raised. We do, however, comment on the discovery problems encountered by defendant as we are concerned they may reflect an erroneous understanding by the municipal judge of the scope of discovery a defendant charged with speeding is entitled to and an unsupported conclusion by the Superior Court judge that the municipal prosecutor's insistence upon a fee of $25 for the discovery was reasonable.

The facts are not complex. On January 14, 1997, at 12:56 p.m., the Frenchtown Chief of Police was parked "alongside the road in the Plessi parking lot." His patrol vehicle had a K–55 device which was in a stationary mode. The Chief was originally trained and certified to operate the K–55 device during his initial police academy training in 1968 and, since then has been recertified as an operator every five years. His most recent certification was issued in May 1996 and expired in May 1999, subsequent to the speeding infraction and subsequent to the Chief's municipal court testimony. In addition to providing this certification, the State produced an April 27, 1995, certificate of calibration for the K–55 device the Chief used and certificates, dated September 27, 1996,

of the two tuning forks used by the Chief the day of the infraction. In this respect, the Chief testified that, using the tuning forks both when he first started his patrol and after he issued defendant's summons, he determined that the K–55 device was operating accurately. *See State v. Wojtkowiak,* 174 *N.J.Super.* 460, 463, 416 *A.*2d 975 (App.Div.1980). ·

When the Chief first observed defendant's vehicle, he was driving northbound on Harrison Street and appeared to be exceeding the twenty-five mile per hour speed limit. The Chief thought he was driving 45 to 50 miles per hour. There were no other cars in the area; when he locked the K–55 onto defendant's vehicle, he got a reading of 51 miles per hour. He proceeded after him, and stopped him on Route 619. The transcript does not reflect how long it took to stop defendant or to issue the summons.

After the stop and issuance of the summons, the Chief said he returned to where he had originally been parked, advising the Court that "I think Your Honor should know the reason I was there, is that is the time that kindergarten class lets out and this is directly across from the Elementary School. And it's been a habit of mine personally as an officer, to be there when the school changes classes, when they come and they go." At no point, however, did the Chief say that at the time he clocked defendant's speed the kindergarten class had "let[ ] out" or that children were in fact changing classes.

■ We are convinced this is fatal to the State's case. To be sure, the State established the reliability of the K–55 reading beyond any reasonable doubt. And the Chief did refer to posted speed signs that indicated the zone was a twenty-five mile per hour speed zone. But during defendant's several pretrial efforts to obtain discovery, the State expressly waived any attempt to establish a twenty-five mile per hour speed zone other than as a school zone within the meaning of *N.J.S.A.* 39:4–98a.[1]

---

1 The State did so in the following manner. One of defendant's discovery requests consisted of "[a]ll documents ... relating to the establishment of the

Pursuant thereto, a motorist must not exceed "[t]wenty-five miles per hour, when passing through a school zone during recess, when the presence of children is clearly visible from the roadway, or while children are going to or leaving school, during opening or closing hours...." We have recently construed this statutory speed limit provision and, in doing so, rejected the contention that *N.J.S.A.* 39:4–98a establishes "the special speed at all times in a school zone." *State v. Beierle,* 325 *N.J.Super.* 395, 401, 739 *A.2d* 465 (App.Div.1999). We held that *N.J.S.A.* 39:4–98a is applicable only "(1) during school hours, but only during recess, when children are clearly visible from the roadway, or (2) when children are going to or leaving school during opening or closing hours of school." *Id.* at 400, 739 *A.2d* 465.

■ The State has the burden of showing that the twenty-five mile per hour speed limit applies. *State v. Tropea,* 78 *N.J.* 309, 312–13, 394 *A.2d* 355 (1978). During the municipal court trial, the Chief testified that, at the time he stopped defendant, he was stationed directly across from the elementary school at the time of the stop because that ordinarily is the time that kindergarten class lets out. There was no testimony, however, that the school was actually in session, and, if so, it was recess time, with children visible from the road. Neither was there any evidence that children were going to or leaving the school during its opening or

---

speed limit on Harrison Street," including the "time and date of town meeting to set limit, newspapers ads to inform public of the town meeting, notice in newspapers of the establishment of speed limit on Harrison St., all documents that you intend to use to prove that the speed limit on Harrison St. was legally set...." When pressed by the municipal judge during argument on defendant's discovery requests, the prosecutor stated that the State would not rely upon a county resolution establishing a speed limit as otherwise provided for by *N.J.S.A.* 39:4–98, but rather would prosecute the speeding infraction as a violation of *N.J.S.A.* 39:4–98a as charged. This aspect of defendant's discovery request, then was thereby rendered moot. Thus, when at trial the State sought to introduce a county resolution to establish the posted speed other than as a school zone twenty-five miles per hour speed limit, the court sustained defendant's objections, noting that the State was limited to establishing a speeding infraction under *N.J.S.A.* 39:4–98a.

closing hours. Without such evidence, the State cannot establish beyond a reasonable doubt that at the time of the stop, defendant was subject to the school zone speed limit of twenty-five miles per hour.

In so concluding, we observe that our determination has nothing whatsoever to do with the credibility of the Chief, accepted by both the Municipal and Superior Court judges. We have no reason not to defer to the lower courts' credibility determinations. *See State v. Locurto,* 157 *N.J.* 463, 474, 724 *A.*2d 234 (1999). But the difficulty is that what the Chief said was not enough—that it may be his usual habit to set up radar across from the school at around 12:56 p.m. because that is when the classes usually let out or change does not establish that those were the circumstances extant at the time of defendant's stop. At best, they may have been, but a maybe does not "firmly convince" us of defendant's guilt, as required under the reasonable doubt standard. *State v. Medina,* 147 *N.J.* 43, 61, 685 *A.*2d 1242 (1996), *cert. denied,* 520 *U.S.* 1190, 117 *S.Ct.* 1476, 137 *L.Ed.*2d 688 (1997).

Given this conclusion, we need not address defendant's other contentions. We do, however, comment upon the discovery problems that developed below. In addition to the materials relating to the speed limit which we have set forth in footnote 1, defendant sought from the municipal prosecutor copies of the arresting officer's log book for January 14, 1997, copies of both sides of the summons, a description of the K–55 device, its calibration, and its maintenance and repair history, a copy of the calibration certification for tuning forks, a copy of the calibration of the police car's speedometer, and the officer's K–55 training and his employment history. The prosecutor refused to respond at all to this request until defendant paid a $25 "fee."

Finding no authority for such a "fee," defendant refused to pay it and moved to compel the discovery. During argument on the motion, the prosecutor also took the position that defendant's discovery rights extended only to what the State was going to rely upon to prove its case and further agreed to the court's making

copies of the documents for defendant but upon the condition that defendant agree not to pursue his threatened civil suit over the $25 "fee."

We comment on these aspects of the case to express first our concern over the views expressed by both the municipal judge and the prosecutor as to the limits of defendant's discovery rights. Under *R.* 7:4–2(h), the rule in effect at the time of appellant's offense, "[d]epositions and discovery in any case in which the defendant may be subject to imprisonment or other consequence of magnitude if convicted shall be as provided by *R.* 3:13–2 and *R.* 3:13–3 provided that the municipality in which the case is to be tried has a municipal prosecutor." Since the time of the offense, this provision has been replaced by *R.* 7:7–7 which provides that when "the government is represented by the municipal ... prosecutor, discovery shall be available to the parties only as provided by this rule, unless the court otherwise orders." *R.* 7:7–7(a). Pursuant to *R.* 7:7–7(b), a defendant is entitled to discovery "[i]n all cases involving a consequence of magnitude or when ordered by the court...." That rule provides further that the defendant "shall be allowed to inspect, copy, and photograph or to be provided with copies of any relevant ... results or reports of ... scientific tests or experiments made in connection with the matter ... that are within the possession, custody or control of the prosecuting attorney books, ... papers and documents ... within the possession, custody or control of the government; [and] police reports that are within the possession, custody or control of the prosecuting attorney." *R.* 7:7–7(b). When a defendant represents himself *pro se* the rule instructs him to make his requests for discovery in writing directly to the municipal prosecutor, who "shall respond to the discovery request ... within 10 days after receiving the request." *R.* 7:7–7(f).

In addition to potential financial consequences related to insurance costs, a defendant charged with violation of *N.J.S.A.* 39:4–98 faces the potential of a fine and/or up to fifteen days of incarceration. *N.J.S.A.* 39:4–104. A driver's license suspension may also be imposed. *N.J.S.A.* 39:5–30. We agree with the

Superior Court Judge that these consequences are of sufficient magnitude to trigger the discovery rights provided formerly by *R.* 7:4–2(h) and presently by *R.* 7:7–7(b). *See State v. Polasky,* 216 *N.J.Super.* 549, 551–54, 524 *A.2d* 474 (Law Div.1986). *Cf. State v. Utsch,* 184 *N.J.Super.* 575, 579, 446 *A.2d* 1236 (App.Div.1982). And, while such discovery rights are not without limitation, they can clearly encompass more than discovery of what the State intends to produce at trial. *See State v. Ford,* 240 *N.J.Super.* 44, 49, 572 *A.2d* 640 (App.Div.1990) (municipal court discovery pursuant to *R.* 7:4–2(h) is limited to "relevant items, within the limitations of *R.* 3:13–3(a), which there is a reasonable basis to believe *will assist a defendant's defense.*" (emphasis added)). *Compare State v. Young,* 242 *N.J.Super.* 467, 471, 577 *A.2d* 520 (App.Div. 1990) (in a DWI proceeding, the production of ampules from the same batch used in defendant's breathalyzer test is not required as a matter of routine discovery when "there is no reasonable basis to believe that production ... will assist in defendant's defense.").

■ We also express our concern over the $25 "fee" and the refusal to provide discovery unless defendant agreed to drop his civil suit. We know of no authority for either, and the State cites none. As to the "fee," the court rules governing discovery in the municipal court, either those in existence of the time of the infraction or currently, do not authorize a municipal prosecutor to charge what the prosecutor apparently views as an administrative fee to cover his overhead. Moreover, while a copying charge might be appropriate, we hardly think a flat $25 fee even approaches a reasonable copying charge. *See for example, N.J.S.A.* 47:1A–2 (copy charges under Right to Know Law are $.75 per page up to tenth page, $.50 per page up to twentieth page and $.25 per page thereafter). *And see Laufgas v. New Jersey Turnpike Authority,* 156 *N.J.* 436, 440–41, 720 *A.2d* 335 (1998) (construing *N.J.S.A.* 53:2–3 to permit the State police to charge a $10 fee for nonroutine copying of certified copies of accident reports and copies of photographs but otherwise permitting only copying

charges as provided for under the Right to Know law). Furthermore, we are troubled by defendant's unaddressed assertion that "[e]very town is doing it. And (inaudible) charges $15, Jersey City charges $10, he charges $25, so depending on what town you get caught in ... the costs are different." Such practices, if they exist, reflect unequal treatment that we are not sure should exist.

We hope the discovery problems here are unique. But we have a sense that the heart of the contention, the $25 so-called administrative fee, may be the rule rather than the exception. We also sense that defendant's observations of the lack of any consistency from one municipality to another may be accurate. We have inquired of the Administrative Office of the Courts as to whether there exists any court directive on the subject of fees charged by municipal prosecutors as a condition of providing discovery. We are told there are none. We are also told that such advice more appropriately might come from the Attorney General's office. *See generally, Kershenblatt v. Kozmor,* 264 *N.J.Super.* 432, 438–39, 624 *A.*2d 1042 (Law Div.1993).

In any event, this appeal is not an appropriate vehicle for resolving this issue. But we are convinced some thought should be given to establishing a uniform rule governing such fees, if they are to be permitted and, accordingly, refer that issue to the Supreme Court Criminal Practice Committee and the Committee on Municipal Courts for such considerations as they, or the Supreme Court, deem appropriate.

Reversed and remanded to the Superior Court for the entry of an order vacating the conviction and fine.