967 A.2d 882 (2009)
406 N.J. Super. 305
John D. CONSTANTINE, on behalf of himself and all others similarly situated, Plaintiff-Appellant,
v.
TOWNSHIP OF BASS RIVER (improperly named as Bass River Township), Bass River Township Police Department, Office of Bass River Township Municipal Prosecutors, and all municipalities, municipal government authorities similarly situated, Defendants-Respondents.
Municipalities of Bound Brook, Bradley Beach, Carteret, Dunellen, East Windsor, Helmetta, Jamesburg, Kearny, Metuchen, Middlesex Millstone, Milltown, New Brunswick, North Brunswick, Plainsboro, Sayerville, South *883 Amboy, South Boundbrook, South Plainsfield, South River, Spotswood And Spring Lake Heights (Hereafter "The Middlesex Jif Municipalities") City of Asbury Park, Township of Princeton and Borough of East Newark, Township of Hasbrouck Heights, Borough of Teterboro, Township of Cinnaminson, Borough of Caldwell, Township of Cedar Grove, Township of Verona, Township of Little Falls, Township of Township of West Caldwell, Township of West Paterson, Borough of Totowa, Town of Guttenberg, Borough of Freehold, Township of Freehold, Township of Chatham, Borough of Kinnelon, Township of West Milford, Township of Mine Hill, Morris Township, Town of Morristown, Borough of Netcong, Township of Pequannock, Township of Washington, Township of Warren, Borough of Roselle Park, Borough of Pompton Lakes, Borough of Mantoloking, Borough of Riverdale, Borough of Ringwood, Township of Wayne, Borough of North Haledon And Borough of Wanaque, City of Newark, Intervenors-Respondents.
DOCKET NO. A-5506-06T3.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 2008.
Decided April 3, 2009.
*885 Sander D. Friedman argued the cause for appellant (Friedman Doherty, LLC, attorneys; Mr. Friedman and Donald M. Doherty, Jr., on the brief).
Thomas M. Barron, Moorestown, argued the cause for respondent Township of Bass River (Barron, Baker & Posternock, L.L.P., attorneys; Mr. Barron, on the brief).
Scott E. Rekant, Trenton, argued the cause for intervenors-respondents Municipalities of Bound Brook, Bradley Beach, Carteret, Dunellen, East Windsor, Helmetta, Jamesburg, Kearny, Metuchen, Middlesex, Millstone, Milltown, New Brunswick, Plainsboro, Sayerville, South Amboy, South Boundbrook, South Plainsfield, South River, Spotswood and Spring Lake Heights, "Middlesex JIF Municipalities" (Sokol, Behot & Fiorenzo, attorneys; Mr. Rekant and Steven Siegel, on the brief).
Evelyn R. Storch, Newark, argued the cause for intervenors-respondents Township of Hasbrouck Heights, Borough of Teterboro, Township of Cinnaminson, Borough of Caldwell, Township of Cedar Grove, Township of Verona, Township of Little Falls, Township of Little Falls, Township of West Caldwell, Township of West Paterson, Borough of Totowa, Town of Guttenberg, Borough of Freehold, Township of Freehold, Township of Chatham, Borough of Kinnelon, Township of West Milford, Township of Mine Hill, Morris Township, Town of Morristown, Borough of Netcong, Township of Pequannock, Township of Washington, Township of Warren, Borough of Roselle Park, Borough of Pompton Lakes, Borough of Mantoloking, Borough of Riverdale, Borough of Ringwood, Township of Wayne, Borough of North Haledon and Borough of Wanaque, *886 (Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman, attorneys; H. Curtis Meanor, on the joint brief).
William B. McGuire argued the cause for intervenors-respondents City of Asbury Park, Township of Princeton and Borough of East Newark (Tompkins, McGuire, Wachenfeld & Barry, attorneys; Marianne M. DeMarco, on the joint brief).
Julien X. Neals, Acting Corporation Counsel, Newark Department of Law, attorney for intervenor-respondent City of Newark, joins in the joint brief of intervenors-respondents Township of Cinnaminson, City of Asbury Park, Township of Princeton, and Borough of East Newark.
Before Judges PARRILLO, LIHOTZ and MESSANO.
The opinion of the court was delivered by
MESSANO, J.A.D.
Plaintiff John Constantine paid twenty dollars to obtain three pages of discovery related to a speeding summons issued as he drove through the Township of Bass River (Bass River). He pled guilty to a "non-speed specific driving violation" in the municipal court, but then filed this action on behalf of himself, and others similarly situated, against defendants Bass River, its police department, its municipal prosecutor (collectively, the Bass River defendants), and "all municipalities [and] municipal government authorities similarly situated." Asserting a variety of legal theories, plaintiff alleged that the Bass River defendants and members of the putative defendant class improperly charged excess fees for written discovery in their municipal courts.
After a number of interlocutory orders that we discuss in greater detail below, the trial judge entered an order on January 8, 2008 that denied plaintiff's motion for "bilateral class certification" and dismissed his complaint with prejudice. This appeal followed. Having considered the arguments raised by plaintiff in light of the record and applicable legal standards, we affirm.

I.
This case is a sequel to an earlier, similar class action also brought before the same trial judge in the Law Division, Burlington County. We briefly discuss that matter, Fernandez v. Willingboro Twp., Docket No. BUR-L-003362-03, to provide context to the procedural history of this litigation.[1]
In Fernandez, six similar class action complaints challenging the fees charged to municipal court defendants for discovery were consolidated by consent order. The order further certified a plaintiff class, "defined as all persons that [] since January 19, 2000 ... [paid] flat fees for [m]unicipal [c]ourt discovery obtained from municipalities constituting the `Defendant Class.'" The defendant class was "defined as all political subdivisions of the State of New Jersey that [we]re insured by the Municipal Excess Liability Joint Insurance Fund (the MEL-JIF) that have since January 19, 2000 charged flat fees ... for Municipal Court discovery." "Flat fees" were "defined as the practice of [] charging a single sum for discovery no matter the number of pages provided ... [or] charging a single sum ... for [an] initial *887 amount of discovery and a per page charge for each additional page...."
On September 13, 2004, the trial judge entered an order approving settlement of the class action. Six municipalitiesthe Borough of Closter, the Borough of Ramsey, the City of Cape May, the Borough of Ridge Park, the Borough of Beachwood and the Township of Clarkthough insured by the MEL-JIF, opted out of the class action settlement.[2] In total, the remaining Fernandez settling defendant class consisted of 352 political subdivisions of this State.
Pursuant to the settlement, members of the defendant class agreed to modify their municipal court discovery practices. Effective September 30, 2004, they adopted a uniform schedule of fees to be charged for paper discovery: $.75 for pages one through ten; $.50 for pages eleven through twenty; and $.25 for all pages thereafter.[3] The defendant class members also agreed to impose a "mailing charge" limited to the cost of actual postage, plus $.25. Pursuant to the settlement, members of the plaintiff class who paid in excess of the new fee structure would be reimbursed the difference.
In the interim, on August 23, 2004, represented by the same counsel that prosecuted the Fernandez matter, plaintiff filed his complaint challenging the discovery fees assessed by the Bass River defendants and a putative class of 216 other municipalities. The complaint alleged that the defendant class charged fees in excess of OPRA, "the Right to Know Law," and the "common law right to know doctrine"; that plaintiff had been deprived of various Federal and State constitutional rights resulting in violations of 42 U.S.C.A. § 1983 and § 1988; and that the actions of the defendant class were "ultra vires" and resulted in the individual members' "unjust enrichment." Plaintiff immediately moved for certification of both the plaintiff and defendant classes.
By order of November 18, 2004, the judge granted plaintiff's motion to certify the defendant class but reserved decision on certification of the plaintiff class. The order defined the defendant class as "all municipalities ... excepting those which have resolved municipal court discovery charges ... pursuant to the settlement entered in to (sic) by 352 municipalities in Fernandez...." Bass River was designated as defendant class representative, its counsel was designated as class counsel, and provisions for notice to all class members were ordered.
Various members of the defendant class filed timely objections to the certification order. After oral arguments, the judge entered an order dated April 11, 2005 that decertified the class. At a later proceeding, the judge stated that defendant class certification had "been improvidently granted without appropriate rigorous analysis required by our rules and case law...." The order also granted plaintiff leave to file an amended complaint, which he did on May 2, 2005.
The amended complaint once again alleged that discovery fees charged by the defendant class violated OPRA, the Right to Know Law, and the common law right to know doctrine. Plaintiff no longer alleged constitutional or federal statutory *888 violations, but rather invoked the court's "[g]eneral [e]quitable [p]owers" to order "disgorgement [of] sums beyond what should legally have been charged" for discovery. Plaintiff repeated a claim that the members of the defendant class had unjustly enriched themselves. Some discovery ensued, apparently limited to the Bass River defendants furnishing a list of defendants to whom motor vehicle summonses were issued during the relevant time period.
Plaintiff then moved for partial summary judgment seeking a declaration as to what fees could be permissibly charged for municipal court discovery. He argued that principles of "fundamental fairness" required all municipal court discovery should be free of charge. Plaintiff further argued that because OPRA was inapplicable to the issue at hand, it would be inappropriate to utilize its statutory fee schedule. Alternatively, plaintiff argued that members of the defendant class could only charge for the "actual cost" incurred in furnishing discovery.
In a thoughtful oral opinion, the judge agreed that municipalities could not charge a flat fee for municipal court discovery, stating "a flat fee is entirely inappropriate and absent statutory authority such as that found in N.J.S.A. 39:[4]-[1]31 or N.J.S.A. 53:2-3, municipalities have no authority to enact, either by ordinance, resolution or other regulation, a flat fee charge for documents."[4] Noting our opinion in State v. Green, 327 N.J.Super. 334, 342, 743 A.2d 357 (App.Div.2000), and our concern for the "lack of any consistency" in municipal court discovery fees throughout the State, the judge concluded a similar lack of uniformity would result if each municipality charged its "actual costs" for municipal discovery. Instead, the judge concluded the OPRA fee schedule should apply. He stated:
OPRA ... provides a fee schedule that can apply to all Municipal Courts and is subject to change only when the legislature sees fit to do it. The adoption of that fee schedule for Municipal Court discovery, without the limitation of all of the other OPRA provisions, has two beneficial effects. One, it is cloaked with a presumption of validity ... as are... all other legislative enactments. Secondly, it will stabilize the discovery process in Bass River, and perhaps throughout the county.
....
For now, the adoption of the OPRA schedule, without the limitations contained in the OPRA Act, creates a degree of certainty, uniformity and fairness to all who are involved in the Municipal Court process.... Furthermore, it doesn't conflict with Rule 7:7-7(a) that requires all discovery to be made available, but provides for no fee schedule.
(Emphasis added.)
The order entered on July 24, 2006 permitted Bass River to charge fees for municipal court document discovery in accordance with the OPRA rate schedule, but it was silent as to an effective date and did not provide any individual relief to plaintiff. The issue of prospective relief, however, had already become moot, since the Bass River defendants had ceased charging *889 municipal court defendants for discovery as of the fall of 2004.
Plaintiff filed a motion for leave to file a second amended complaint, seeking, among other things, to include a count claiming the putative defendant class violated the provisions of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2 (the CRA). Specifically, plaintiff alleged he had been deprived of the following: "due process and/or equal protection rights and/or substantive due process, and/or [the] right to confront accusers and/or open access to government ... [and] substantive rights, privileges and/or immunities secured by the Constitution or laws of this State." The Bass River defendants opposed the motion.
After considering oral arguments of the parties, the judge denied plaintiff's request. Relying on the Supreme Court's holding in Pasqua v. Council, 186 N.J. 127, 892 A.2d 663 (2006), he reasoned that the CRA did not apply to causes of action that accrued prior to its effective date, i.e., September 10, 2004. He noted that plaintiff's original complaint was filed "[a] short period of time" before the effective date, and, since "many, many months" had passed and the parties had "been through so much in th[e] case[,]" permitting amendment now was inappropriate.
On December 20, 2006, plaintiff moved for an order seeking bilateral class certification. Members of the putative defendant class were granted limited intervention rights to file briefs in opposition. We gather from the transcript of the proceedings that ninety-four municipalities and Bass River opposed plaintiff's motion. In a comprehensive letter opinion dated May 1, 2007, the judge denied plaintiff's motion in its entirety, and noted the complaint was dismissed "of necessity."[5] He entered an order to that effect on May 14, 2007.
Plaintiff filed his notice of appeal on June 26, 2007 seeking review of the judge's order denying class certification. We determined that order was interlocutory in nature, and, by order dated January 3, 2008, temporarily remanded the matter to the trial judge for the entry of the final order now the subject of our review. In addition, we granted a series of motions to intervene brought on behalf of fifty-seven municipalities as members of the putative defendant class.

II.
Plaintiff argues that "fundamental fairness" mandates that municipal court discovery should be provided free of charge to all defendants upon request. Alternatively, he contends that municipalities should be permitted to charge only for the "actual costs" of providing the discovery, and that the trial judge erred in adopting the OPRA fee schedule. Additionally, plaintiff argues that the denial of his bilateral class certification motion was error, and that his motion to amend the complaint to allege violation of the CRA was improperly denied.
The Bass River defendants and the intervenors contend that the judge properly denied bilateral class certification and plaintiff's motion to amend his complaint. *890 However, they part company with each other regarding the proper resolution of the substantive dispute over municipal court discovery fees.
The Bass River defendants argue that the trial judge's adoption of the OPRA fee schedule was "a proper exercise of his supervisory power" and urge us to affirm his interlocutory order to that effect. One group of intervenors, collectively self-described as the "Middlesex JIF Municipalities," argues that plaintiff's complaint was properly dismissed because he "failed to assert his discovery grievance in the underlying [municipal court] action," and no "substantive basis to bring an independent cause of action" exists. Additionally, they argue that in ordering application of the OPRA fee schedule, the trial judge usurped the constitutional authority of the Supreme Court to "make rules governing the administration of all courts in the State and ... the practice and procedure in all such courts." N.J. Const. art. VI, § 2, ¶ 3. The second group of intervenor municipalities argues that the Supreme Court has implicitly rejected the adoption of a uniform schedule of fees for municipal discovery throughout the state. In this regard they note that after our express invitation to the "Supreme Court Criminal Practice Committee and Committee on Municipal Courts" to consider the issue, Green, supra, 327 N.J.Super. at 342, 743 A.2d 357, neither committee recommended any change whatsoever in our Rules, and the Court did not adopt any change.
We have considered these arguments and conclude that the trial judge's adoption of the OPRA fee schedule was improper. However, plaintiff's complaint as amended was properly dismissed with prejudice because he presented no constitutional, statutory, or other basis for the relief sought.[6]

A.
We begin by providing some historical context to the issue. In Green, the defendant sought to contest a speeding ticket and was required to pay the municipal prosecutor a twenty-five dollar discovery "fee." Id. at 336, 743 A.2d 357. He objected, refused to pay the fee, and threatened to initiate a civil suit over the matter. Id. at 336-37, 743 A.2d 357. We reversed the defendant's conviction on other grounds, expressing "our concern over the $25 `fee' and the refusal to provide discovery unless defendant agreed to drop his civil suit." Id. at 341, 743 A.2d 357.
As to the "fee," the court rules governing discovery in the municipal court ... do not authorize a municipal prosecutor to charge what the prosecutor apparently views as an administrative fee to cover his overhead. Moreover, while a copying charge might be appropriate, we hardly think a flat $25 fee even approaches a reasonable copying charge....
We hope the discovery problems here are unique. But we have a sense that the heart of the contention, the $25 so-called administrative fee, may be the rule rather than the exception. We also sense that defendant's observations of the lack of any consistency from one municipality to another may be accurate.
[Id. at 341-42, 743 A.2d 357.]
Noting the absence of any guidance from the Administrative Office of the Courts or the Attorney General's office, we referred the issue to the Supreme Court Criminal Practice Committee and the Committee on *891 Municipal Courts. Id. at 342, 743 A.2d 357.
The Criminal Practice Committee responded to our referral in its 2000-2002 report which provided:
9. Discovery Fees

State v. Green, 327 N.J.Super. 334, 743 A.2d 357 (App.Div.2000) involved the appeal of a municipal court conviction for speeding in a school zone. In the opinion, the Appellate Division commented on the problems experienced by the defendant in obtaining discovery materials. The opinion was referred to the Criminal Practice Committee and the Committee on Municipal Courts to consider whether a uniform rule governing discovery fees should be established. The Criminal Practice Committee learned that the County Prosecutors and Public Defender had worked out differing fee arrangements in every county and that the individual arrangements were working. Thus, the Committee decided not to recommend a rule amendment at this time.

[Crim. Practice Comm., 2000-02 Comm. Report, p. 82 (January 15, 2002) (emphasis added).]
The Committee on Municipal Courts, however, never addressed the issue formally in its report for that term. Mun. Ct. Practice Comm., 2000-02 Comm. Report, (January 15, 2002). No further action has since been taken by the Administrative Office of the Courts, or the Supreme Court. Nor has the Executive or Legislative Branch acted since our opinion in Green. We now consider whether plaintiff has raised a cognizable claim for relief in his complaint.

B.
Plaintiff contends that "fundamental fairness" requires that municipal discovery should be provided free of charge. We disagree.
"New Jersey's doctrine of fundamental fairness `serves to protect citizens generally against unjust and arbitrary governmental action, and specifically against governmental procedures that tend to operate arbitrarily. [It] serves ... as an augmentation of existing constitutional protections or as an independent source of protection against state action.'" Doe v. Poritz, 142 N.J. 1, 108, 662 A.2d 367 (1995) (quoting State v. Ramseur, 106 N.J. 123, 377, 524 A.2d 188 (1987) (Handler, J., dissenting)). Although the doctrine of fundamental fairness has been applied in many contexts, "there is [always] one common denominator[,]" "a determination that someone was being subjected to potentially unfair treatment and there was no explicit statutory or constitutional protection to be invoked." Id. at 109, 662 A.2d 367. Despite the breadth of its potential reach, "[f]undamental fairness is a doctrine to be sparingly applied ... in those rare cases where not to do so will subject the defendant to oppression, harassment, or egregious deprivation." State v. Yoskowitz, 116 N.J. 679, 712, 563 A.2d 1 (1989) (Garibaldi, J., concurring and dissenting).
We acknowledge that our courts have "relied on the concept of fundamental fairness to require procedures to protect the rights of defendants at various stages of the criminal justice process even when such procedures were not constitutionally compelled." Doe, supra, 142 N.J. at 108, 662 A.2d 367 (collecting cases). And, our liberal discovery rules serve to support more basic fundamental rights accorded a criminal defendant. See, e.g., State v. Gilchrist, 381 N.J.Super. 138, 144, 885 A.2d 29 (App.Div.2005) (discovery is essential so that a criminal defendant may exercise his right to confront adverse witnesses); see also State v. Blake, 234 N.J.Super. 166, 173, 560 A.2d 702 (App.Div.1989) (full discovery *892 is necessary so that defendant may make an informed choice whether to testify at trial).
However, in this case, there is no allegation that the prosecutor failed to comply with his discovery obligations under our Court Rules, R. 7:7-7, and plaintiff was not denied access to the discovery to which he was entitled. Therefore, the exercise of his basic rights before the municipal court was not compromised in any fashion. Defendant suffered no "oppression, harassment, or egregious deprivation" as a result of paying a modest sum of money to obtain the discovery. In short, we are unconvinced that the doctrine of fundamental fairness has any application to the issue at hand, or that it provides a basis for plaintiff's claim for relief.

C.
Having already received the discovery in question, plaintiff's complaint did not seek relief under OPRA or the common law right of access to public records. He argues by analogy, however, that municipal agencies should be limited to charging only the "actual costs" associated with producing discovery because that is the permissible fee that may be charged to a member of the public to access public records under the common law. Similarly, the Bass River defendants and the trial judge recognized that plaintiff's claim did not arise under OPRA, though the judge believed that imposition of the OPRA fee schedule, "without the limitations contained in [] OPRA," was the proper exercise of his jurisdiction and discretion. On appeal, the Bass River defendants have urged us to affirm that decision. As we explain below, we conclude that the body of jurisprudence that has developed under either the common law right to public access of government records, or OPRA, had no application to this case, and does not provide a basis for the relief plaintiff sought.
We have, in other contexts, noted that "New Jersey provides access to public records in three ways: (1) through the citizen's common law right of access; (2) OPRA; and (3) through the discovery procedures applicable to civil disputes." Bergen County Improvement Auth. v. N. Jersey Media Group, Inc., 370 N.J.Super. 504, 515, 851 A.2d 731 (App.Div.) (citing Atlantic City Convention Ctr. Auth. v. S. Jersey Publ'g Co., 135 N.J. 53, 59, 637 A.2d 1261 (1994) (in turn citing Irval Realty, Inc. v. Bd. of Pub. Util. Comm'rs, 61 N.J. 366, 372, 294 A.2d 425 (1972)), certif. denied, 182 N.J. 143, 861 A.2d 847 (2004). Regarding the common law right of access, we long ago noted "in furtherance of good government the right of interested citizens and taxpayers to inspect public records should be broadly recognized[.]" Taxpayers Ass'n of Cape May v. Cape May, 2 N.J.Super. 27, 31, 64 A.2d 453 (App.Div. 1949) (emphasis added). The right is limited, however, and in order to access government records under the common law, a citizen must meet three requirements. Keddie v. Rutgers, 148 N.J. 36, 50, 689 A.2d 702 (1997). "(1) [T]he records must be common-law public documents; (2) the person seeking access must establish an interest in the subject matter of the material; and (3) the citizen's right to access must be balanced against the State's interest in preventing disclosure." Ibid. (internal citations omitted); see also Higg-A-Rella, Inc. v. County of Essex, 141 N.J. 35, 46, 660 A.2d 1163 (1995); S. Jersey Publ'g Co. v. N.J. Expressway Auth., 124 N.J. 478, 487, 591 A.2d 921 (1991). Although the common law definition of a public record is broad, access is limited to only those who can demonstrate either "a wholesome public interest or a legitimate private interest[]" in the document. Loigman v. *893 Kimmelman, 102 N.J. 98, 112, 505 A.2d 958 (1986) (internal quotation omitted). Under the common law, a public official may charge for the "actual cost of copying the record," but not the costs of any associated labor. Dugan v. Camden County Clerk's Office, 376 N.J.Super. 271, 279, 870 A.2d 624 (App.Div.), certif. denied, 184 N.J. 209, 876 A.2d 283 (2005). By permitting a presumptively reasonable charge to be assessedactual costs of copyingthe citizen's right to access a public record will not be thwarted. Higg-A-Rella, Inc., supra, 141 N.J. at 53, 660 A.2d 1163; and see Moore v. Bd. of Chosen Freeholders, 39 N.J. 26, 31, 186 A.2d 676 (1962) (noting that where a reasonable charge would nonetheless impair public access, "the public official should calculate his charge on the basis of actual costs").
Similar to the common law right of access, "OPRA's purpose is `to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Mason v. City of Hoboken, 196 N.J. 51, 64-65, 951 A.2d 1017 (2008) (quoting Asbury Park Press v. Ocean County Prosecutor's Office, 374 N.J.Super. 312, 329, 864 A.2d 446 (Law Div.2004)) (emphasis added). The definition of a "government record" under OPRA, however, is narrower than the common law definition of a "public record." Mason, supra, 196 N.J. at 67, 951 A.2d 1017; N.J.S.A. 47:1A-1.1. Additionally, the statute exempts twenty-one different categories of records from its definition of a government record. Bergen County Improvement Auth., supra, 370 N.J.Super. at 516, 851 A.2d 731.[7] Under OPRA, a citizen need not demonstrate any particularized public or private interest in the document. Mason, supra, 196 N.J. at 67, 951 A.2d 1017.
In granting plaintiff's partial summary judgment motion, the judge utilized the fees included in OPRA to fashion a remedy. The statute provides,
A copy or copies of a government record may be purchased ... upon payment of the fee prescribed by law or regulation, or if a fee is not prescribed by law or regulation, upon payment of the actual cost of duplicating the record. Except as otherwise provided by law or regulation, the fee assessed for the duplication of a government record embodied in the form of printed matter shall not exceed the following: first page to tenth page, $ 0.75 per page; eleventh page to twentieth page, $ 0.50 per page; all pages over twenty, $ 0.25 per page.... If a public agency can demonstrate that its actual costs for duplication of a government record exceed the foregoing rates, the public agency shall be permitted to charge the actual cost of duplicating the record.
[N.J.S.A. 47:1A-5(b) (emphasis added).]
We note that absent a showing that "actual costs for duplication" exceed the fee schedule, these fees are maximum limits to be utilized whenever the "fee is not prescribed by law or regulation." Otherwise, OPRA permits a government agency to charge only for the actual costs of duplication, and thus, applies the same fee limits associated with the common law right of public access. See Libertarian Party of Cent. New Jersey v. Murphy, 384 N.J.Super. *894 136, 139, 894 A.2d 72 (App.Div.) (noting "the guiding principle set by the statute [is] that a fee should reflect the actual cost of duplication"), certif. granted and remanded on other grounds, 188 N.J. 487, 909 A.2d 723 (2006); see also Dugan, supra, 376 N.J.Super. at 279, 870 A.2d 624 (holding "the fees allowable under the common law doctrine are consistent with those allowable under OPRA"). Thus, while the use of the OPRA maximum charges might be reasonable and foster uniformity as the judge noted, they are not the fees permitted by the statute in the first instance.
More importantly, the synonymous policies underlying OPRA and the common law right of public access to government records have little to do with an individual defendant's right to obtain discovery in the municipal court. As the Supreme Court has already noted in the context of discovery in criminal cases,
[T]he policies that inspire the common-law right of inspection of public documents are different from the considerations that govern discovery in criminal proceedings. The interests at stake in criminal proceedings require a different analysis and a balancing of different interests. The appropriate analysis and balancing of interests is reflected in our criminal discovery rules.... We ... hold that the common-law right to inspect public documents may not be invoked in a pending criminal case by a defendant seeking discovery rights beyond those granted by Rule 3:13-2 to -4.
[State v. Marshall, 148 N.J. 89, 274, 690 A.2d 1, cert. denied, 522 U.S. 850, 118 S.Ct. 140, 139 L.Ed.2d 88 (1997).]
Similarly, we have said, "OPRA is a public disclosure statute and is not intended to replace or supplement the discovery of private litigants. Its purpose is to inform the public about agency action, not necessarily to benefit private litigants." MAG Entertainment, LLC v. Div. of Alcoholic Beverage Control, 375 N.J.Super. 534, 545, 868 A.2d 1067 (App.Div.2005).
Indeed, the discovery routinely provided to a municipal court defendant does not include records of the court itself. See R. 7:7-7(b) (setting forth those categories of items that must be supplied in discovery to a defendant in municipal court). As a result, the documents provided in discovery are routinely neither "public records" nor "government records" maintained by the municipal court. Thus, a request made under OPRA or the common law right of access served on the municipal court would not necessarily result in the production of the discovery a defendant was entitled to receive.
The question, of course, is not whether the policy supporting access to public records and the policy supporting a defendant's access to discovery are congruent, because they clearly are not. The issue is whether absent specific authority from the Legislature, the Executive Branch, or the Supreme Court, can plaintiff, by analogy to OPRA or the common law right of access, support a cognizable cause of action in this case and request a judicial declaration as to permissible fees for discovery in the municipal courts. We conclude that he cannot.

III.
Having concluded that plaintiff cannot support his claim for relief by invoking the doctrine of fundamental fairness, or by analogizing his cause of action to one pled under OPRA or the common law right to know, we nevertheless believe it appropriate to refer the issues raised for consideration by others outside the context of this litigation.
*895 In the municipal court, "[a]ll discovery requests ... shall be served on the municipal prosecutor, who shall be responsible for making government discovery available to the defendant." R. 7:7-7(a); and see N.J.S.A. 2B:25-5a (making the "municipal prosecutor ... responsible for handling all phases of the prosecution of an offense, including but not limited to discovery"). However, depending upon who is representing the State in the municipal court, a defendant's discovery request is subject to divergent paths. See Pressler, Current N.J. Court Rules, comment 7 on R. 7:7-7 (2009). If the State is represented by the municipal prosecutor, she is responsible to respond to the request. R. 7:7-7(a). But if the State is not represented by the municipal prosecutor, the discovery request must be transmitted by the municipal prosecutor to the private prosecutor handling the case, and she is responsible to furnish defendant with discovery. Ibid. Lastly, "if there is no prosecutor, the municipal prosecutor shall transmit defendant's court ordered discovery requests to the complaining witness." Ibid.; see also, Pressler, supra, comment 7 on R. 7:7-7 (noting that under the Rule, "the defendant is entitled to discovery ... if facing a consequence of magnitude but only if the State is represented by a public or private prosecutor, unless the court otherwise orders. If the State is not so represented, defendant must seek discovery directly from the court.") (emphasis added). Our Rule does not set any particular fee for copying pertinent municipal discovery and furnishing it to a defendant.[8]
The municipal prosecutor's pre-eminent role in providing discovery predates our current Rule. Although R. 7:7-7(a) was newly adopted in 1997, a predecessor Rule provided in relevant part,
Depositions and discovery in any case in which the defendant may be subject to imprisonment or other consequence of magnitude if convicted shall be as provided by R. 3:13-2 and R. 3:13-3 provided that the municipality in which the case is to be tried has a municipal prosecutor.
[R. 7:4-2(g)(1978).]
As the Law Division noted in interpreting the old Rule,
There are very good reasons for settling th[e] responsibility [for responding to a discovery request] upon the prosecutor and no one else. In the first place, the court clerk is an employee of the court, not of the prosecutor. If the clerk is responsible for providing discovery, the court is also responsible and is placed in a very awkward position, especially if a mistake is made. Police officers are not prosecutors; they are law enforcers and State witnesses. It makes no sense to require witnesses to respond to discovery demands, particularly not witnesses whose interests may be adverse to defendants who make discovery requests.
[State v. Polasky, 216 N.J.Super. 549, 554-55, 524 A.2d 474 (Law Div.1986).]
See also State v. Prickett, 240 N.J.Super. 139, 146, 572 A.2d 1166 (App.Div.1990) (noting "it is the municipal prosecutor who selects the State's witnesses, requests postponements for the State, complies with discovery rules, requests dismissal if the State cannot make out a case, and does all else necessary to prepare and present the State's cases in the municipal court") (emphasis added).
*896 Each municipal prosecutor is the subordinate of her respective county prosecutor. State v. Holup, 253 N.J.Super. 320, 324-25, 601 A.2d 777 (App.Div. 1992). The county prosecutor may supercede a municipal prosecutor with respect to the prosecution of not only crimes, but also motor vehicle violations committed in his respective county. State v. Downie, 229 N.J.Super. 207, 209 n. 1, 550 A.2d 1313 (App.Div.1988), aff'd on other grounds and remanded, 117 N.J. 450, 569 A.2d 242, cert. denied, 498 U.S. 819, 111 S.Ct. 63, 112 L.Ed.2d 38 (1990). With the passage of the Municipal Prosecutor Act in 2000, N.J.S.A. 2B:25-1 through -12, the Legislature emphasized that direct line of authority. See N.J.S.A. 2B:25-7 (permitting the county prosecutor, upon notice to the Attorney General, to supercede the municipal prosecutor or intervene in any prosecution in the municipal court).
Each county prosecutor, in turn, is under the direct supervision of the Attorney General. See Wright v. State, 169 N.J. 422, 437-38, 778 A.2d 443 (2001) (explaining the relationship between the two offices and discussing the Attorney General's supervisory and supercession powers). Moreover, the Attorney General's general supervisory powers extend directly to municipal law enforcement. See N.J.S.A. 52:17B-112c (permitting the Attorney General to "call into conference the county prosecutors ... and any other law enforcement officers of this State ... for the purpose of discussing the duties of their respective offices with a view to the adequate and uniform enforcement of the criminal laws of this State"); see also Kershenblatt v. Kozmor, 264 N.J.Super. 432, 439, 624 A.2d 1042 (Law Div.1993) (discussing the relationship between the municipal prosecutor, the county prosecutor, and the Attorney General).
Holup provides significant guidance as to the proper interplay between the court and the various prosecutorial agents in so far as discovery in the municipal court is concerned. There, the defendant challenged his conviction for drunk driving and other motor vehicle offenses because the State failed to provide discovery. Holup, supra, 253 N.J.Super. at 321, 601 A.2d 777. In particular, the municipal prosecutor had failed to respond to the written discovery request because it was sent to the municipal court clerk, and not to the prosecutor's private law practice. Id. at 322-23, 601 A.2d 777. Although the discovery was ultimately produced, the defendant argued that his interlocutory motion to dismiss should have been granted. Id. at 322, 601 A.2d 777.
We affirmed defendant's conviction, and took note of the Attorney General's efforts to implement "uniformity and fairness" in the discovery practice throughout the municipal courts via his implementation of a directive involving reports from the State Police. Id. at 324, 601 A.2d 777. The policy was directed not only to that agency, but also to the municipal prosecutors throughout the state. Ibid. We further noted that the Attorney General had urged the implementation of a similar procedure by all county prosecutors "for the municipal and county police agencies in [their] jurisdiction[s]." Ibid. n. 2. We concluded,
We believe that compliance with this directive and its extension to local police will alleviate much of the confusion permeating the discovery practices in the municipal courts. We recommend, to all county prosecutors, immediate implementation of the directive so that they, by virtue of their power as chief law enforcement officers of their counties, will direct the full implementation of the Attorney General's directive and that, in turn, each municipal prosecutor, as subordinates, will forthwith comply.

*897 [Id. at 324-25, 601 A.2d 777.]
As the above amply demonstrates, the furnishing of discovery in the municipal courts is primarily an executive function. By Rule and statute the responsibility is given to the municipal prosecutor whose conduct falls squarely within the supervision and command of the respective county prosecutor, and in turn, of the Attorney General. As it relates to this case, we have little doubt that the Attorney General has the inherent power, absent specific legislation, to direct municipal prosecutors as to the appropriate fees they may charge for furnishing documentary discovery in the municipal courts. We therefore refer the matter to the Attorney General for her studied consideration.
Our preceding remarks, of course, do not foreclose action by the Legislature in this regard. We recognize fully that in many other settings, the Legislature has exercised its power to set a schedule of fees to be charged for the copying and production of various documents that in many circumstances ultimately are relevant to matters pending in our court system. OPRA is simply one of many such examples, too numerous to detail. See Laufgas v. N.J. Tpk. Auth., 156 N.J. 436, 720 A.2d 335 (1998) (interpreting N.J.S.A. 39:4-131, supra, and N.J.S.A. 53:2-3, supra); N.J.S.A. 39:3-28 (setting fees for certified copies of drivers' licenses and motor vehicle registrations); N.J.S.A. 12A:9-525(a)(7) (setting fee for copies of filed UCC financing statements); N.J.S.A. 22A:4-12 (setting fees for copies of judgment abstracts); N.J.S.A. 22A:2-29 (setting copy fees for all recorded documents in the county clerk's office "in all civil or criminal causes"); N.J.S.A. 22A:2-30 (setting fees for copies of wills); N.J.S.A. 26:8-64(a) (setting fees payable to the State Registrar for searching and copying "records of births, deaths, marriages, civil unions or domestic partnerships"). We therefore invite the Legislature to address the appropriate fees to be charged for municipal court discovery.
Having urged the other two branches of government to act, we by no means imply that our courts have no function to fulfill in the process, and we venture no opinion as to whether a municipal court discovery fee schedule imposed by our Supreme Court is the proper solution to concerns of fairness and uniformity implicitly raised by this litigation. In this regard, we fully recognize the constitutional authority accorded the Supreme Court to "make rules governing the administration of all courts in the State and ... the practice and procedure in all such courts." N.J. Const. art. VI, § 2, ¶ 3; Winberry v. Salisbury, 5 N.J. 240, 255, 74 A.2d 406, cert. denied, 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950); George Siegler Co. v. Norton, 8 N.J. 374, 381, 86 A.2d 8 (1952).[9]
*898 Moreover, in the event either the Legislature or the Attorney General takes action, our courts must ultimately ensure that any fee imposed is reasonable, and that its imposition does not infringe upon an individual defendant's access to discovery.[10] Recognizing the Constitutional mandate of separation of powers, N.J. Const. art. III, ¶ 1, and the limitations imposed therein, such is a traditional function of our courts. Each municipal court judge must also remain free to entertain applications for relief that may arise based upon particularized circumstances. State v. Scherzer, 301 N.J.Super. 363, 417, 694 A.2d 196 (App.Div.), certif. denied, 151 N.J. 466, 700 A.2d 878 (1997).
Lastly, as our discussion regarding Rule 7:7-7 reveals, there are occasions when private prosecutors may be called upon to furnish discovery, or the court may order discovery to be furnished whenever a prosecutor is not representing the State. As a result, the Supreme Court may wish to address the appropriate fees that may be charged in such circumstances, or, indeed, such issues may be best addressed by the individual municipal court judge handling the matter. We express no opinion about which course is preferable. We refer consideration of the matter to the Supreme Court's Committee on Municipal Court Practice.

IV.
In summary, we affirm the dismissal of plaintiff's complaint because it failed to state a cognizable cause of action. Absent specific legislation, the issue of what fees may be charged for municipal court discovery, and whether such fees should be uniformly enacted throughout the state, is most appropriately reserved for the Executive branch to address, or otherwise subject to the Supreme Court's supervisory authority over all matters of practice and procedure in our courts.
As a result, we do not consider the other issues raised by plaintiff on appeal.[11]
Affirmed.
NOTES
[1] We exercised our discretion and granted the Bass River defendants' motion to supplement the record to include materials from the Fernandez litigation. Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 452, 916 A.2d 440 (2007). Because the materials have some limited relevancy to the issues presented, we refer to them as needed.
[2] These six municipalities are now members of the putative defendant class in this litigation.
[3] This schedule of fees is taken from the schedule contained in the Open Public Records Act (OPRA). N.J.S.A. 47:1A-5(b). We discuss in greater detail below whether OPRA's fee schedule reflects the permissible charges for a "government record," N.J.S.A. 47:1A-1.1, under OPRA.
[4] The version of N.J.S.A. 39:4-131 in effect at the time of the hearing permitted citizens to purchase police vehicle accident reports for the fee set in N.J.S.A. 47:1A-2, the former Right to Know Law. The statute was amended, effective January 26, 2007, to reference the fee schedule in OPRA. N.J.S.A. 53:2-3 sets fees that the New Jersey State Police may charge for certified copies of reports, photographs, or other information pertaining to automobile accidents or other casualties.
[5] If the OPRA fee schedule contained in the judge's prior order granting partial summary judgment was applied to plaintiff's individual claim, the Bass River defendants should have been required to disgorge $17.25, i.e., the difference between twenty dollars plaintiff actually paid, and $2.25 that would have been assessed for the three pages of discovery under the new fee schedule. Although plaintiff's complaint was dismissed with prejudice, the parties confirmed at oral argument that no judgment was ever entered in plaintiff's favor, nor did the Bass River defendants remit payment. The issue apparently is of no consequence to the parties, so we therefore do not address it.
[6] Based on our conclusion, we need not consider plaintiff's appeal of the denial of bilateral class certification and the denial of his second request to amend his complaint.
[7] Indeed, as plaintiff notes, OPRA explicitly provides that "criminal investigatory records" are not "government records." N.J.S.A. 47:1A-1.1. We need not consider the scope of this exemption as applied to discovery in the municipal courts because that is not before us. We only raise the point as indicative of OPRA's inapplicability to the issues we consider.
[8] Judge Pressler has commented that "no fee other than a per page copying fee may be imposed as a condition for complying with a discovery demand or indeed any other condition not authorized by rule." Pressler, supra, comment 7 on R. 7:7-7. There is no authority cited for this proposition, but we assume this reference is to our dicta in Green, supra.
[9] The trial judge did not base his decision to set a fee schedule upon the exercise of his supervisory powers as Assignment Judge for the vicinage. R. 1:33-4. The Bass River defendants argue the judge had the authority to set a fee schedule prospectively under the authority of that Rule which provides, in relevant part,

The Assignment Judge shall be the chief judicial officer within the vicinage and shall have plenary responsibility for the administration of all courts therein, subject to the direction of the Chief Justice and the rules of the Supreme Court. The Assignment Judge shall be responsible for the implementation and enforcement of the rules, policies and directives of the Supreme Court, the Chief Justice and the Administrative Director.
[R. 1:33-4(a) (emphasis added).]
We believe the Rule does not provide any basis to set a schedule of fees for municipal court discovery since the Supreme Court has not issued any direction through its rules, nor has the Administrative Director issued any directive or guidance to the Assignment Judges in this regard.
[10] As we noted above, plaintiff has apparently foregone any request for a decision regarding the reasonableness of the actual fee imposed individually upon him in this case. We do not hesitate to endorse the trial judge's conclusion, however, that under the specific facts of this case, the charging of a "flat fee" of twenty dollars for three pages of discovery was "inappropriate."
[11] It necessarily follows that plaintiff's proposed second amended complaint which alleged a cause of action under the CRA would also not be cognizable. The CRA provides a cause of action to one "deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law." N.J.S.A. 10:6-2(c). Plaintiff could allege no such injury. In light of the dismissal of plaintiff's complaint, all issues regarding class certification are moot.